**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| MAHSA TALEBI, *et al.*, | ) | |
| *Plaintiffs*, | ) | |
| v. | ) | Civil Action No. 1:25-cv-839 (PTG/WEF) |
| KENNETH PLATEK, *et al.*, | ) | |
| *Defendants*. | ) | |

**MEMORANDUM ORDER**

This matter is before the Court on Defendants' Motion to Dismiss (Dkt. 9) (the "Motion"). Plaintiffs Hamid Hosseinvand, Hanif Khademi Gazanak, Fatemeh Dehghannejad, Babak Bozorgmehri, Mahsa Talebi, Seyedehirana Darvishiamrei, Michael Bahrami, Seyed Mohammad Hassan Fazeli Petroudi, Shaghayegh Yazdanpanah Ravari, Mohammad Akbarzadeh Sarabi, Ali Motallebi, Sepideh Hayatolgheibi, Seyedeh Sara Ketabi, Sana Rahimian, Elham Khataee, and Hadi Mohammadpour have sued seeking a writ of mandamus and declaratory and injunctive relief against Defendant Kenneth Platek, as Acting Director of the National Vetting Center, and Defendant Marco Rubio, as Secretary of State. Dkt. 1. Plaintiffs allege that Defendants improperly withheld and unreasonably delayed timely action on their nonimmigrant visa applications. *Id.* at 1-2. Plaintiffs ask the Court to compel a final decision on their pending applications. *Id.* at 2. Defendants allege that the Court lacks subject matter jurisdiction and that Plaintiffs fail to state a claim because their applications are no longer pending. Dkt. 10 at 1-2; Dkt. 15 at 1. This matter was fully briefed. Dkts. 1, 10, 14, 15. For the reasons stated below, the Court finds that it has subject matter jurisdiction but dismisses this case for failure to state a claim.

# I. BACKGROUND

## A. Statutory and Regulatory Background

A nonimmigrant "who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study" may apply for an F-1 visa. 8 U.S.C. § 1101(a)(15)(F)(i). To obtain an F-1 visa, the applicant must gain acceptance to an approved program signified with a Form I-20. 8 C.F.R. § 214.2(f)(1)(i) (2026). A noncitizen "who is a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill" may apply for a J-1 nonimmigrant visa. 8 U.S.C. § 1101(a)(15)(J). The nonimmigrant spouse of a J-1 or F-1 visa holder may also apply for a J-2 or F-2 nonimmigrant visa, respectively. *Id.* § 1101(a)(15)(F)(i), (J).

The Immigration and Nationality Act ("INA") requires applicants to "furnish to the consular officer … a certified copy of such documents pertaining to him as may be by regulations required." *Id.* § 1202(d). "All nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." *Id.* The INA does not provide a clear definition of what it means for a consular officer to have "adjudicated" a visa application. *Id.*

The "Secretary of State shall require every alien applying for a nonimmigrant visa … who is at least 14 years of age and not more than 79 years of age to submit to an in[-]person interview with a consular officer," unless the applicant obtains a waiver. *Id.* § 1202(h)(1). After the interview, a consular officer "shall determine … [t]he alien's eligibility to receive a visa." 22 C.F.R. § 41.102(a) (2026).

After a noncitizen has "properly completed and executed" a "visa application," a "consular officer must issue the visa, refuse the visa, or, pursuant to an outstanding order under INA 243(d),

discontinue granting the visa." *Id.* § 41.121(a). "No visa or other documentation shall be issued" if (1) "it appears to the consular officer … that such alien is ineligible to receive a visa … under section 1182 of this title, or any other provision of law"; (2) "the application fails to comply with the provisions of this chapter, or the regulations issued thereunder"; or (3) "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." 8 U.S.C. § 1201(g). According to the Foreign Affairs Manual, "[a] refusal under INA [§] 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." U.S. Dep't of State, Foreign Affs. Manual § 9 FAM 302.18(B)(U)(c) (2025). Applicants can "overcome" such a refusal by presenting "additional evidence." *Id.* § 9 FAM 306.2(a) (2021).

Statutes and regulations do not impose a mandatory deadline for the timing of visa adjudications. The applicable federal regulations state only that consular officers must ensure "that the Form DS-160 … is properly and promptly processed in accordance with the applicable regulations and instructions." 22 C.F.R. § 41.106 (2026). Under the Administrative Procedure Act ("APA"), "each agency shall proceed to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b).

**B. Plaintiffs' Visa Application History**

Plaintiffs Mahsa Talebi, Fatemeh Dehghannejad, Mohammad Akbarzadeh Sarabi, Hadi Mohammadpour, Shaghayegh Yazdanpanah Ravari, Hanif Khademi Gazanak, Ali Motallebi, Hamid Hosseinvand, Michael Bahrami, Sana Rahimian, and SeyedehIrana DarvishiAmre were accepted to graduate school programs across several U.S. universities and applied for F-1 visas. Dkt. 1 at 5-8. Plaintiffs Seyedeh Sara Ketabi and Babak Bozorgmehri were selected for research scholar positions and applied for J-1 visas. *Id.* at 8.

Plaintiff Elham Khataee is a noncitizen and the spouse of Plaintiff Gazanak, and Plaintiff Sepideh HayatolGheibi is a noncitizen and the spouse of Plaintiff Hosseinvand. *Id.* at 6-7. They both applied for derivative F-2 visas. *Id.* Plaintiff Seyed Mohammad Hassan Fazeli Petroudi is a noncitizen and the spouse of Plaintiff Ketabi, and he applied for a derivative J-2 visa. *Id.* at 8.

Defendants issued INA § 221(g) notices of refusal in response to Plaintiffs' respective visa applications. Dkt. 1 at 1.

## II. STANDARD OF REVIEW

"Generally, a court must resolve jurisdictional issues before considering the merits of a claim." *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022). Federal district courts are courts of limited subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Defendants can challenge subject matter jurisdiction under Rule 12(b)(1) through either a facial or factual attack. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); Fed. R. Civ. P. 12(b)(1). A facial challenge argues that the complaint lacks sufficient jurisdictional allegations, while a factual challenge asserts that the complaint's jurisdictional facts are untrue. *Id.* "[A] federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing Fed. R. Civ. P. 12(h)(3)) (holding that the court may raise the absence of subject matter jurisdiction "at any time"); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When reviewing a 12(b)(6) motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint" and draw "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted).

## III. DISCUSSION

### A. Article III Standing

To have Article III standing, a plaintiff must allege that they have suffered (1) an "injury in fact" that is (2) "fairly traceable" to the defendant's challenged conduct and is (3) "likely … [to] be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted). "An injury in fact must be 'concrete,' meaning that it must be real and not abstract … and it must affect the plaintiff in a personal and individual way and not be a generalized grievance." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citation and internal quotation marks omitted). Concrete injuries include "traditional tangible harms, such as physical harms and monetary harms," and "[v]arious intangible harms," including not only those harms "specified by the Constitution itself." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). A fairly traceable injury is one that "likely was caused or likely will be caused by the defendant's conduct." *All. for Hippocratic Med.*, 602 U.S. at 382. "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (citation and internal quotation marks omitted).

Here, Plaintiffs have suffered an injury in fact that is fairly traceable to the Defendants' conduct because Plaintiffs face a "real and immediate risk of losing [their] admittance" to, and research positions at, various U.S. universities, as well as "significant mental distress and anxiety"

flowing from Defendants' conduct. Dkt. 1 at 17-36. Defendants contend that because Plaintiffs are foreign nationals with no independent right to enter the U.S., they have not suffered an injury in fact. Dkt. 10 at 8. In so doing, Defendants "put the merits cart before the standing horse" by conflating the jurisdictional question of standing with a merits determination. *Cooksey v. Futrell*, 721 F.3d 226, 239 (4th Cir. 2013) (internal citation and quotation marks omitted). Therefore, the Court finds that Plaintiffs have shown standing to sue.

**B. Plaintiffs' APA and Mandamus Claims**

"[T]he only agency action that can be compelled under the APA is action legally *required*," which historically was "limited to enforcement of a specific unequivocal command … the ordering of a precise, definite act … about which [an official] had no discretion whatever." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (internal citations and quotation marks omitted). Thus, mandamus relief is available only where the agency has a clear duty to act. Courts look for an "indication of binding commitment" in assessing whether a clear duty to act exists. *Id.* at 69. "[T]he presence of unmistakably mandatory language, such as the word 'will,' can provide sufficient evidence of the unequivocal command required … to hold that an agency is compelled to act." *Lovo v. Miller*, 107 F.4th 199, 211 (4th Cir. 2024) (internal citation and quotation marks omitted). "[T]he impact of seemingly mandatory or permissive language depends heavily on the context." *Id.* at 212.

"Similar to the APA, the Mandamus Act only permits federal courts to exercise jurisdiction if an agency has a clear duty to act." *Lovo*, 107 F.4th at 216. "[M]andamus 'may be invoked only where three elements co-exist: (1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other

adequate remedy is available.'" *Mohammed v. Holder*, 695 F. Supp. 2d 284, 291 (E.D. Va. 2010) (quoting *In re First Fed. Sav. & Loan Ass'n of Durham,* 860 F.2d 135, 138 (4th Cir.1988)).

There are statutory and regulatory provisions that require Defendants to act on Plaintiffs' visa applications. The INA provides that "[a]ll nonimmigrant visa applications *shall* be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d) (emphasis added). Likewise, federal regulations state that "[w]hen a visa application has been properly completed and executed," "the consular officer *must* issue the visa, refuse the visa, or, pursuant to an outstanding order under INA [§] 243(d)," which does not apply here, "discontinue granting the visa." 22 C.F.R. § 41.121(a) (2026) (emphasis added). The language is clear: refusal of a visa satisfies the APA and Mandamus Act's mandatory language requirement. Once a consular officer refuses a visa application per INA § 221(g), the application has been "processed in accordance with the applicable regulations and instructions." 22 C.F.R. § 41.106 (2026).

Here, Defendants have taken the action required of them because they issued INA § 221(g) refusals to Plaintiffs. There are no further discrete actions consular officers must take to satisfy their obligations under the INA, 22 C.F.R. § 41.121(a), or any other pertinent statute or regulation. *See, e.g., Berenjian v. Blinken*, No. 1:24-cv-00663-MSN-IDD, 2024 WL 3732451, at *3 (E.D. Va. Aug. 8, 2024) (holding that "[t]his [INA § 221(g)] refusal at the time of the applicant's interview discharges the government's obligations with respect to the application," thus depriving the district court of subject matter jurisdiction); *Ameen v. U.S. Dep't of State*, No. 1:23-cv-01397-MSN-JFA, 2024 WL 3416264, at *3 (E.D. Va. July 15, 2024) ("[Plaintiff] does not raise any mandatory procedures which Defendants have failed to follow" because "an initial refusal followed by further inquiry is consistent with visa statutes and regulations."). Therefore, the Government discharged

its duty when it refused Plaintiffs' applications under INA § 221(g). Additionally, no additional facts would change this analysis, and thus leave to amend would be futile.

Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (Dkt. 9) is **GRANTED**. The Complaint is **DISMISSED**.

The Clerk's Office is DIRECTED to close this civil matter.

Entered this 24th day of September, 2026.
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge